In the Matter of MICHAEL KUZMA, as President of FRIENDS OF J.N. ADAM, et al., Appellants, v CITY OF BUFFALO et al., Respondents. [845 NYS2d 880]—

Appeal from a judgment (denominated order) of the Supreme Court, Cattaraugus County (Larry M. Himelein, A.J.), entered May 18, 2006 in a proceeding pursuant to CPLR article 78. The judgment, insofar as appealed from, granted those parts of the motion of respondents Empire State Development Corporation, Dormitory Authority of State of New York and Office of Mental Retardation and Developmental Disabilities of State of New York to dismiss the first through third causes of action against them, granted the motion of respondent City of Buffalo to dismiss the SEQRA allegations against it and denied petitioners' cross motion for summary judgment on the petition.

It is hereby ordered that the judgment insofar as appealed from be and the same hereby is unanimously reversed on the law without costs, the motion of respondents Empire State Development Corporation, Dormitory Authority of State of New York and Office of Mental Retardation and Developmental Disabilities of State of New York is denied in part and the first through third causes of action against those respondents are reinstated, the motion of respondent City of Buffalo is denied in its entirety and the first cause of action against that respondent is reinstated, the cross motion is granted in part and the petition is granted in part by annulling the 1998 negative declaration, the resolution by the Common Council of respondent City of Buffalo approving the sale of its reversionary interest in the

property in question and the contract for the sale of that property.

Memorandum: Petitioners commenced this CPLR article 78 proceeding seeking to annul two related administrative determinations. The first determination is a resolution by the Common Council of respondent City of Buffalo (City) approving the sale of the City's reversionary interest in a 649-acre portion of a former State mental hygiene facility known as the J.N. Adam Developmental Center (Center) to the State of New York. The second is a determination by respondents Empire State Development Corporation (ESDC), Dormitory Authority of State of New York, and Office of Mental Retardation and Developmental Disabilities of State of New York (collectively, State) to enter into a contract for the sale of the Center to respondent Thomas S. Trathen, as managing member of Trathen Land Company, LLC (Trathen). In general terms, petitioners challenge the prospective sale by the City and State of their respective interests in the environmentally sensitive and historically significant Center to enable Trathen to log the heavily wooded property on which the Center is located, with no guarantee that the historic structures located on the property would be preserved. In the first through third causes of action of the petition, petitioners allege that both the City and the State violated article 8 of the Environmental Conservation Law (State Environmental Quality Review Act [SEQRA]), and they further allege that the State violated Public Buildings Law § 63 (1) and (4) and PRHPL 14.09 (1) and (2).

Petitioners appeal from a judgment that granted the motion of the State for leave to reargue with respect to Supreme Court's denial of that part of its motion seeking dismissal of the first cause of action, alleging a SEQRA violation, and, following reargument, granted the motion of the State to dismiss the petition against it in its entirety. In addition, the court granted the motion of the City to dismiss the SEQRA allegations against it, denied the cross motion of petitioners for summary judgment on the petition, and "ORDERED[,] ADJUDGED AND DECREED that the State respondents, upon their further SEQRA [review] and determination as to whether or not the conveyance of the Center to Trathen may have a significant impact on the environment, shall provide notice of their determination to Petitioners, and [shall not] transfer . . . title to the Center to Trathen . . . until after 15 days after the State respondents provide such notice." In dismissing the petition against the State, the court determined that the petition was a premature challenge to the State's non-final determination inasmuch as

the State agreed after the commencement of this proceeding "to reopen the prior negative declaration and do a new SEQRA analysis," with notice to petitioners of "whatever determination is made." In addition, the State acknowledged that it must comply with its obligations pursuant to the Public Buildings Law and PRHPL by engaging in the statutorily required inter-agency "consultations" with the New York State Office of Parks, Recreation, and Historic Preservation (OPRHP). Those commitments of the State stemmed from its belated realization that the Center is in fact eligible for inclusion on the State Register of Historic Places.

The court erred in dismissing as premature the first through third causes of action, alleging the violations of SEQRA, the Public Buildings Law and PRHPL. In acknowledging that it has yet to comply with its obligations under those statutes, the State has failed to demonstrate that the challenged determinations are not final and that the first three causes of action are thus premature. Instead, the State has effectively conceded the invalidity of its determinations and hence the merit of those causes of action against it. In particular, the State has effectively conceded that the 1998 negative declaration cannot stand because it is based on erroneous information, i.e., that there is no historic significance to the Center and that the sale of the Center would have no impact upon cultural resources included in or eligible for inclusion in the State Register of Historic Places. Under the circumstances, it cannot be said that the State "identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination" of environmental nonsignificance (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417 [1986]; *see Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 688 [1996]; *Chinese Staff & Workers Assn. v City of New York*, 68 NY2d 359, 363-364 [1986]). The negative declaration thus must be annulled (*see* CPLR 7803 [3]; *see generally Matter of Kahn v Pasnik*, 90 NY2d 569, 574 [1997]; *Gernatt Asphalt Prods.*, 87 NY2d at 688; *Akpan v Koch*, 75 NY2d 561, 570 [1990]; *Jackson*, 67 NY2d at 417). The State also has effectively conceded that any minimal consultations between ESDC with OPRHP were inadequate to discharge the State's responsibilities under the Public Buildings Law and PRHPL (*see* Public Buildings Law § 63 [1], [4]; PRHPL 14.09; *see also* 9 NYCRR 428.8).

Rather than dismissing the petition against the State as premature, we conclude that the court should have granted the petition against the State in part, despite the fact that the State

has not yet answered the petition (*cf.* CPLR 7804 [f]; *Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County*, 63 NY2d 100, 103 [1984]). Where, as here, the dispositive facts and the positions of the parties are fully set forth in the record, thereby making it "clear that no dispute as to the facts exists and [that] no prejudice will result from the failure to require an answer," the court may reach the merits of the petition and grant the petitioner judgment thereon notwithstanding the lack of any answer and without giving the respondent a further opportunity to answer the petition (*Nassau BOCES Cent. Council of Teachers*, 63 NY2d at 102; *see Matter of Laurel Realty, LLC, v Planning Bd. of Town of Kent*, 40 AD3d 857, 860 [2007]; *Matter of Intermor v Board of Trustees of Inc. Vil. of Malverne*, 286 AD2d 330, 331-332 [2001]; *Matter of Citizens Against Retail Sprawl v Giza*, 280 AD2d 234, 240 [2001]).

The State's conceded failure to perform a valid review under SEQRA and to engage in the statutorily required interagency consultations warrants the annulment of the State's 1998 negative declaration and the concomitant determination of the State to enter into a contract for the sale of the Center to Trathen (*see Devitt v Heimbach*, 89 AD2d 920 [1982], *affd* 58 NY2d 925 [1983]; *see generally Matter of Save the Pine Bush v City of Albany*, 70 NY2d 193, 206-207 [1987]; *Chinese Staff & Workers Assn.*, 68 NY2d at 369; *Matter of Watch Hill Homeowners Assn. v Town Bd. of Town of Greenburgh*, 226 AD2d 1031, 1033-1034 [1996], *lv denied* 88 NY2d 811 [1996]). As the Court of Appeals has stated, "[t]he suggestion . . . that [a SEQRA violation] can be cured by 'an amended negative declaration' . . . finds no support in the carefully drafted procedures of the statute and would effectively allow the [State] to comply with SEQRA . . . only as an afterthought following a successful challenge to [its] prior action" (*Chinese Staff & Workers Assn.*, 68 NY2d at 369). Moreover, under the circumstances of this case, and in fairness to all parties concerned, the State's violation of SEQRA requires the annulment of the Common Council's resolution approving the sale of the City's reversionary interest to the State. We note that both the Common Council's resolution approving the conveyance of the City's reversionary interest and the formal reverter release executed by the Mayor are referable to the contract for the sale of the Center by the State to Trathen, which we have annulled herein, inasmuch as both refer to the 649 acres to be sold and to the City's receipt of 90% of the purchase price. Present—Gorski, J.P., Smith, Centra, Fahey and Green, JJ. [*See* 11 Misc 3d 1061(A), 2006 NY Slip Op 50338(U) (2006).]